United States District Court
Southern District of Texas

**ENTERED**

March 22, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ELENA CANTU, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-107 |
| | § | |
| PLAINSCAPITAL BANK, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is the self-styled "FDIC's Motion to Dismiss Plaintiff's Claims Pursuant to Federal Rule of Civil Procedure 12(b)(1),"[1] filed by the Federal Deposit Insurance Corporation, as receiver for First National Bank, Edinburg, Texas ("FDIC-R"). A response to the motion was due from Elena Cantu ("Plaintiff") by May 26, 2015. However, without leave of Court, and without any explanation as to why Plaintiff did not meet the deadline, Plaintiff filed an untimely response 45 days later on July 10, 2015.[2] Thereafter, on July 13, 2015, Plaintiff filed an amended response, once again without leave of Court, and without any explanation for its untimeliness.[3] More importantly, both of these late responses fail to address FDIC-R's strongest arguments in favor of dismissal. Therefore, after considering the motion, record, and relevant authorities, the Court **GRANTS** the motion.

### I.    Procedural History and Relevant Facts

The arduous path by which this case has proceeded through the court system necessitates a thorough summarization of the facts. On April 23, 2007, Plaintiff entered into a note ("the Note") with First National Bank ("First National") for $500,000 to purchase land (the

---

[1] Dkt. No. 10.
[2] Dkt. No. 13.
[3] Dkt. No. 14.

"Property"), which Plaintiff pledged as collateral.[4] Additionally, it appears Plaintiff initially had plans to develop the Property with an individual named Rodrigo Martinez ("Mr. Martinez").[5] However, Plaintiff has alleged that on at least three occasions, First National disbursed funds from Plaintiff's loan to Mr. Martinez without her approval.[6] Plaintiff also claims that she paid interest to First National on the property for two years while she was waiting for the funds, which required her to put up her homestead for a reverse mortgage because First National misrepresented to her that it would fund her money to complete the development of a subdivision on the Property.[7] According to First National, during those two years it tried to work with Plaintiff, reinstating the loan and entering into a loan modification agreement with her, requiring her to acknowledge her unpaid amounts on the loan and waive any claims against First National and its employees.[8]

On April 7, 2009, Plaintiff filed a lawsuit against First National arguing similar facts and claims as contained in her complaint in the instant case; however, the case was non-suited on July 29, 2009.[9] Additionally, Plaintiff sued Mr. Martinez and Eduardo Martinez, Jr., individually and d/b/a A.D. & E.E. construction on May 19, 2009. Plaintiff asserts she was granted a final judgment against these defendants on May 1, 2011.[10]

On November 23, 2010, Plaintiff entered into a second modification agreement with First National but continued to default on her obligations.[11] Subsequently, on June 14, 2011, First National accelerated the maturity of the Note and instituted foreclosure proceedings.[12] First

---

[4] Dkt. No. 1, Exh. A-1 at p. 26.
[5] Dkt. No. 1, Exh. A-1 at p. 5.
[6] *Id.*
[7] *Id.*
[8] Dkt. No. 1, Exh. A-1 at pp. 26-27.
[9] Dkt. No. 1, Exh. A-1 at p. 27.
[10] Dkt. No. 1, Exh. A-1 at p. 5.
[11] Dkt. No. 1, Exh. A-1 at p. 28.
[12] *Id.*

National claims that it posted a Notice of Trustee's sale in accordance with Texas law and the Deed of Trust, and the foreclosure sale was scheduled for July 5, 2011.[13] However, Plaintiff filed the instant case in state court on July 1, 2011 against First National and Michael McCarthy, trustee, claiming that First National should not have accelerated the maturity of the note and that she did not receive written notice of the intent to accelerate or foreclose.[14] Plaintiff's original state court petition states that, after two years of "misrepresentation," First National informed Plaintiff that they were not going to fund the money for development and foreclosed on the Property; however, the relief sought was only injunctive relief to stop the foreclosure sale.[15] Also, on July 1, 2011, the state court granted Plaintiff's request for a temporary restraining order ("TRO") thus preventing the foreclosure sale.[16] On July 12, 2011, Plaintiff filed a non-suit against Michael McCarthy, trustee.[17] Finally, on July 14, 2011, the TRO was lifted subsequent to a hearing, and the property was finally foreclosed on August 2, 2011.[18]

On September 13, 2013, First National closed and FDIC-R became receiver for First National.[19] Shortly thereafter, PlainsCapital Bank ("PlainsCapital") became the successor in interest to certain assets of First National, and on October 29, 2013, Red Rock Real Estate Development Group, Ltd ("Red Rock") purchased the Property from PlainsCapital, First National's successor in interest.[20]

On December 16, 2013, Plaintiff filed an administrative claim with FDIC-R claiming that First National should have been more diligent in its allowance of the developer's draws on her loan and that First National should have inspected the real property to determine the status of the

---

[13] *Id.*
[14] Dkt. No. 1, Exh. A-1 at p. 4.
[15] *Id.* at pp. 4-5.
[16] *Id.* at p. 19.
[17] *Id.* at p. 34.
[18] Dkt. No. 10 at ¶5.
[19] Dkt. No. 1, Exh. A-2 at p. 89.
[20] Dkt. No. 1, Exh. A-1 at p. 75.

development.[21] However, according to FDIC-R, the claim *did not* contain allegations of wrongful foreclosure or breach of a constructive trust.[22] Furthermore, FDIC-R alleges that Plaintiff did not mention the pending lawsuit.[23] On April 23, 2014, Plaintiff and FDIC-R agreed to extension of the review,[24] and thereafter, agreed to a second extension on August 21, 2014.[25] Finally, on December 16, 2014, FDIC-R denied Plaintiff's claim and Plaintiff was advised of the 60 day timeframe to file suit.[26]

The state court case lay basically dormant for several years until Plaintiff filed an amended petition on April 14, 2014[27] against First National, PlainsCapital, and Mr. Martinez alleging almost the same facts but also asserting claims against them for wrongful foreclosure and breach of a constructive trust. Plaintiff alleges First National breached a constructive trust because First National funded the construction of Mr. Martinez' homestead through funds drawn from Plaintiff's note and line of credit. Plaintiff claims that Mr. Martinez obtained these funds via fraud and then tendered the money to First National to pay his debts to it. Plaintiff argues that the funds should have been returned to her or used to pay her own debts and asks that the foreclosure sale be set aside.

On April 14, 2014, Plaintiff also filed a notice of *lis pendens* with the Hidalgo County clerk,[28] clouding Red Rock's title to the Property. Thus, Red Rock intervened in the suit on

---

[21] *See* Dkt. No. 10 at ¶6; Dkt. No. 10, Exh. 2 at p. 5.
[22] Dkt. No. 10 at ¶6.
[23] *Id.*
[24] Dkt. No. 10, Exh. 3.
[25] Dkt. No. 10, Exh. 4.
[26] Dkt. No. 10, Exh. 5.
[27] Dkt. No. 1, Exh. A-1 at p. 52.
[28] *Id.* at p. 95.

September 5, 2014.[29] Thereafter, the state court signed an order expunging the *lis pendens* on December 18, 2014.[30]

On February 20, 2015, FDIC-R was substituted as receiver for First National in state court.[31] FDIC-R then removed the case to this Court on March 13, 2015 based on 12 U.S.C. §1819(b)(2)(B), which states that the FDIC as receiver "may, without bond or security, remove any action, suit or proceeding from a state court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."[32]

On July 13, 2015, the parties appeared before the Court for an initial pretrial conference in which the Court dismissed Mr. Martinez as a Defendant in the case for lack of service.[33] Additionally, at the conference, PlainsCapital advised the Court that its interest in the case is related solely to the Property in question, and it does not have any interest in the original loan issued by First National. Moreover, Red Rock advised the Court that it believes it still has an interest in the instant case since Plaintiff is attempting to void the foreclosure sale which would have implications for Red Rock since it is the current owner of the property in dispute. The Court now addresses the merits of the instant motion.

## II.   Motion to Dismiss Under Rule 12(b)(1)

### a.  *Legal Standard*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a civil action for lack of subject matter jurisdiction.[34] The burden of establishing federal jurisdiction

---

[29] *Id.* at p. 74.
[30] Dkt. No. 1, Exh. A-2 at p. 67.
[31] Dkt. No. 10 at ¶12.
[32] 12 U.S.C. §1819(b)(2)(B).
[33] *See* minute entry July 13, 2015.
[34] FED. R. CIV. P. 12(b)(1).

rests on the party seeking the federal forum.[35] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[36] "A question of federal jurisdiction may be raised at any time either by the court *sua sponte* or by motion of any interested party."[37] When conducting a Rule-12(b)(1) analysis, the Court may consider disputed facts and should grant the motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[38] The Court can determine a lack of subject matter jurisdiction in looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[39] Since the Court is not obligated to accept a plaintiff's complaint as true, the Court may consider extrinsic evidence when assessing whether it has jurisdiction.

If the Court dismisses a case for failure of subject matter jurisdiction, it is "not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."[40]

### b. *Discussion*

In the instant motion to dismiss, FDIC-R requests the Court dismiss Plaintiff's claims pursuant to Rule 12(b)(1) for various grounds. The Court finds one of FDIC-R's arguments most compelling; specifically, FDIC-R's assertion that Plaintiff's claims are barred pursuant to 12 U.S.C. §1821(j).[41]

---

[35] *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[36] *Id.* (quotation marks and citations omitted).
[37] *Burks v. Texas Co.*, 211 F.2d 443, 445 (5th Cir.1954).
[38] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[39] *A.A. v. Houston Indep. Sch. Dist.*, CIV.A. H-10-03394, 2011 WL 181356, at *1 (S.D. Tex. Jan. 19, 2011).
[40] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[41] *See* Motion to Dismiss at pp. 6-8.

Pursuant to 12 U.S.C. §1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."[42] The Fifth Circuit has found this provision to be an anti-injunctive bar prohibiting courts from restraining the FDIC.[43] Thus, because of this provision, claims for injunctive relief cannot be sustained against the FDIC.[44] Furthermore, under section 1821(d)(13)(D), "no court shall have jurisdiction over any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or any claim relating to any act or omission of such institution or the Corporation as receiver."[45]

Here, Plaintiff requests in her amended petition that the Court set aside the foreclosure sale; however, such action is expressly prohibited from the plain language of section 1821(j) and 1821(d)(13)(D). Regarding the interplay between the relevant statutes and a court's ability to set aside a foreclosure sale, another court in this Circuit has aptly noted:

> although Plaintiffs . . . do not seek injunctive relief, they do in essence seek rescission of the foreclosure sale. Rescission is an equitable remedy and therefore is prohibited. 12 U.S.C. § 1821(j). In addition 12 U.S.C. § 1821(d)(13)(D) bars any court from exercising jurisdiction over claims seeking a determination of rights with respect to the assets of any depository institution for which FDIC has been appointed receiver. The authority cited by Plaintiffs does not address . . . the jurisdictional limitations imposed by § 1821(j). The Court agrees with FDIC that Plaintiffs cannot seek rescission of the foreclosure sale against FDIC in its capacity as appointed Receiver[.][46]

This Court agrees and holds that the plain language of section 1821(j) and 1821(d)(13)(D) prohibit the Court from taking actions to restrain FDIC-R. Such actions would certainly include

---

[42] 12 U.S.C. §1821(j).
[43] *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 956-57 (5th Cir. 1994).
[44] *Id.*
[45] 12 U.S.C. § 1821(d)(13)(D).
[46] *Clark v. F.D.I.C.*, 849 F.Supp.2d 736, 754 (S.D.Tex.2011) (citation omitted.).

enjoining it by setting aside the foreclosure sale. Accordingly, the Court dismisses this claim against FDIC-R.

Concerning Plaintiff's constructive trust claim, the Court notes that the Fifth Circuit has not ruled directly on how section 1821(j) affects a constructive trust claim against FDIC-R. However, the Eighth Circuit has provided persuasive authority indicating that constructive trusts are in fact barred by this provision. Specifically, the Eighth Circuit has held that the "[i]mposition of a constructive trust would necessarily restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."[47] Moreover, in Texas, "a constructive trust 'is an equitable remedy created by the courts to prevent unjust enrichment.'"[48] As noted above, equitable remedies are expressly prohibited from the plain language of section 1821(j). Thus, the Court finds that section 1821(j) bars Plaintiff's claims against FDIC-R over this claim as well. Accordingly, the Court dismisses this claim against FDIC-R.

Finally, a review of Plaintiff's amended petition[49] indicates that her wrongful foreclosure and breach of constructive trust claims are asserted solely against First National for its alleged "bad acts," which means the claims are actually asserted against FDIC-R and not against PlainsCapital as successor in interest. Furthermore, the only remaining party to the litigation is Red Rock, which is only an intervener. Thus, since the Court has dismissed both claims against FDIC-R, the only actual Defendant in the case, the Court finds that dismissal of the entire suit is

---

[47] *Hanson v. FDIC*, 113 F.3d 866, 871(8th Cir. 1997) (quotation marks and citation omitted).
[48] *See Matter of Monnig's Dept. Stores, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991) (quoting *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex. App.—San Antonio 1982, writ ref'd)).
[49] Dkt. No. 1, Exh. A-1 at p. 52.

proper.

### III.    Holding

For the foregoing reasons, the Court the Court **GRANTS** the motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Accordingly, all of Plaintiff's claims are **DISMISSED**. Additionally, the Court further **DENIES the remaining motions as moot,** which includes: (1) FDIC-R's self-styled "Unopposed Motion For Leave to Amend Answer Pursuant to Federal Rule of Civil Procedure 15(a),"[50] (2) the self-styled "Defendant PlainsCapital Bank's Motion for Leave to File Amended Answer,"[51] (3) the self-styled "Intervenor Red Rock Real Estate Development Group, LTD. Unopposed Motion for Leave to File Amended Pleading,"[52] and (4) the self-styled "Unopposed Motion for Continuance of Dispositive Motion Deadline and Trial,"[53] filed by FDIC-R. This is a final order.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of March, 2016.

_____

Micaela Alvarez
United States District Judge

---

[50] Dkt. No. 19.
[51] Dkt. No. 20.
[52] Dkt. No. 21.
[53] Dkt. No. 24.